770 P.2d 328

**STATE of Arizona, Appellee,**

v.

**Robert Earl WHITE, Appellant.**

**No. CR–86–0389–AP.**

Supreme Court of Arizona,
En Banc.

Feb. 9, 1989.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Joseph T. Maziarz, Asst. Attys. Gen., Phoenix, for appellee.

Patterson & Seplow by Philip A. Seplow, Phoenix, for appellant.

WILLIAM A. HOLOHAN, Justice (Retired).

The defendant, Robert Earl White, was tried and convicted of second degree burglary and sexual assault. He was sentenced to an aggravated term of 20 years' imprisonment on the burglary conviction to run consecutively to a mandatory life sentence on the sexual assault conviction. Thereafter, the defendant filed a timely notice of appeal from the judgments of conviction and the sentences imposed by the trial court. This court has jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031, –4033.

Defendant raises the following issues for consideration:

1. Was there sufficient evidence submitted to the jury to support its finding that the defendant had prior convictions?

2. Did the trial court commit fundamental error by refusing the defendant's request for a live lineup just prior to trial?

3. Did the trial court err in ruling that the probative value of defendant's convictions outweighed their prejudicial effect?

4. Was the jury properly instructed on the burden of proof and was it fundamental error for the court not to instruct, *sua sponte*, the jury on the presumption of innocence?

5. Was it error for the defendant to be tried by a judge *pro tempore?*

6. Should the defendant's clothing have been excluded from evidence as fruit of an illegal seizure?

7. Did the trial court abuse its discretion in failing to grant a mistrial based upon alleged prosecutorial misconduct in closing argument?

8. Did the trial court violate A.R.S. § 13–116, prohibiting double punishment, by sentencing the defendant to consecutive sentences for the burglary conviction and the sexual assault conviction?

9. Was the defendant denied equal protection of the law because of his probationary status?

In addition, we review the record for fundamental error.

On March 1, 1986, the victim returned from work at approximately 6:00 p.m. and went to the apartment of her neighbors, Juan and Melody Trujillo, who were taking care of her two-year-old son, Travis. The defendant, an acquaintance and co-worker of Juan Trujillo, was at the Trujillo apartment at the time, drinking beer and watching television.

The Trujillos offered the victim a beer and introduced her to the defendant. During her visit the defendant asked the victim numerous questions about her personal life and whether she would like to "party" with him. She declined his offer. Before she left to go clean-up, the victim also turned down the defendant's offer to "help" her take a shower. Leaving the Trujillo's apartment with her son, the victim went to visit another neighbor. On her way back to her own apartment, however, the victim encountered the defendant and Juan outside the apartments. She spoke with them briefly before entering her own apartment to take a shower. As she was adjusting the shower temperature, she heard a knock at the front door. She turned the water

off and went to the door. Without opening the door, she asked who was there and the defendant identified himself by name. She told him to go away and that she was in the shower. As she resumed her shower, the defendant appeared in her bathroom, undressed. She grabbed a towel, attempted to cover herself, and ordered him out of the bathroom. Instead, the defendant grabbed her, pulled her from the shower, and began hitting her. The defendant forced the victim to the bathroom floor, repeatedly punched her in the face causing her head to hit the bathtub, and then sexually assaulted her. Hearing the victim's screams, the Trujillos entered her apartment and Juan attempted to open the bathroom door. The door would not open more than six inches but it was enough for Juan to see the defendant punching the victim while holding her head by her hair. He told his wife that the defendant was raping the victim and directed her to call the police. Both Trujillos returned to their apartment and called the police.

When the defendant completed his assault on the victim, he got dressed, told the victim it was her fault because she had invited him in, and returned to the Trujillos' apartment, adjusting his clothes as he went. He then asked Juan to drive him home. Juan refused and told him the police were on the way. The defendant left the apartment building on foot.

When the police arrived both the victim and the Trujillos identified and described the defendant as the assailant. The Trujillos gave the police directions to the defendant's residence. When the police arrived at the defendant's house, an officer knocked on the front door and asked to speak with the defendant whom they could see from the front door. When the defen-

dant saw the officer at his front door, he attempted to flee, but the officers apprehended him in a nearby parking lot. The police seized the defendant's clothing at the police station and analysis of his pants revealed the presence of semen. The police also recovered semen from the victim.[1]

Later that evening, the police conducted a photo lineup. The victim identified two of the six photographs, including the defendant's, as possibly being the attacker. At a subsequent *Dessureault* hearing,[2] the trial judge found the lineup was not unduly suggestive, noted that the two photographs were so similar he could not tell them apart, and refused to require a physical lineup. By the time of the hearing the defendant had altered his appearance by shaving off his mustache and cutting his hair shorter. Juan Trujillo, who had worked with the defendant some 6 to 7 months, testified at the trial and positively identified the defendant as the attacker.

A grand jury indicted the defendant on one count of burglary in the second degree, a class 3 felony, and one count of sexual assault, a class 2 felony. The state later alleged two prior felony convictions, and amended that allegation to include a more recent felony conviction. The state also invoked the provisions of A.R.S. § 13–604.02(B) by alleging that the defendant committed the alleged offenses while he was on probation.[3] After a hearing on the admissibility of defendant's prior convictions for impeachment, the trial judge ruled that the state could impeach the defendant with two of his priors, but he prevented the prosecutor from mentioning that these felony convictions also involved rape or other sexual misconduct. The jury

---

1. The State's expert testified that the semen recovered by the police showed the defendant to be among 6% of the male population that could have deposited the semen found in the victim.

2. *State v. Dessureault,* 104 Ariz. 380, 453 P.2d 951 (1969), *cert. denied,* 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970).

3. This section states in pertinent part:
 Notwithstanding any provision of law to the contrary, a person convicted of any felony offense not included in subsection A of this section if committed while the person is on probation for a conviction of a felony offense or parole, ... shall be sentenced to a term of not less than the presumptive sentence authorized for the offense, and the person is not eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough or release from confinement on any other basis ... until the sentence imposed by the court has been served.

convicted the defendant on both counts.[4] After returning a verdict, the jury tried the allegations of prior convictions and found them to be true.

After the trial court conducted an aggravation/mitigation hearing, the court sentenced the defendant to an aggravated term of 20 years for the burglary conviction, and to a consecutive life sentence on the sexual assault charge. The court found that the defendant's prior criminal record for similar offenses and his continuing course of conduct posing a clear danger to society, supported, if not required, the severe sentence in this case. This appeal followed.

## DEFENDANT'S PRIOR CONVICTIONS

After finding the defendant guilty, the issue of the defendant's prior convictions was submitted to the jury. The state alleged that the defendant had two prior felony convictions, one in Missouri and one in Arizona.

The defendant contends that the trial judge erred in admitting this evidence. He first argues that his prior Missouri conviction should not have been submitted to the jury because the state did not present an actual certified copy of a judgment of conviction. He also argues that the state failed to show that this alleged prior conviction for sexual abuse in the first degree would have been a felony in Arizona. Finally, defendant asserts that neither his Missouri conviction nor his Arizona conviction can be used to enhance his sentence because the state failed to present a factual basis for this prior.

In support of the Missouri allegation, the state presented certified copies of an information charging the defendant with sexual assault in the first degree, the defendant's picture and name card, a plea agreement signed by the defendant, his counsel, and the Missouri prosecutor, docket sheets indicating the agreement was filed in court, and the Missouri court's probation order. The state also included the defendant's fingerprints.

■ In *State v. Nash,* 143 Ariz. 392, 694 P.2d 222 (1985), *cert. denied,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985), this court held that the state may prove prior convictions by evidence other than a certified judgment of conviction. There we found the state had sufficiently proved the defendant's prior conviction based on out-of-state records containing certified copies of the defendant's photographs and a commitment record stating the defendant's crime and his sentence. *Id.* at 403, 694 P.2d at 233. Similarly here, the certified copy of the Missouri court's probation order coupled with the other documents, provides sufficient evidence that the defendant has a prior conviction in Missouri. Although the better practice would be that the state provide a certified copy of the judgment of conviction, we will not disturb a trial court's ruling admitting evidence of a defendant's prior convictions absent an abuse of discretion. *State v. Hooper,* 145 Ariz. 538, 549, 703 P.2d 482, 493 (1985), *cert. denied,* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986).

The defendant next asserts that submitting his Missouri conviction to the jury was error because the state failed to show that this conviction would have been a felony in Arizona. The defendant's trial counsel argued that it was necessary for the state to prove and the trial court to specifically find that the Missouri conviction would be a felony in Arizona in order to submit the matter to the jury.

■ The trial court enhanced the defendant's sentence on the burglary conviction pursuant to A.R.S. § 13–604(D) and § 13–604.02(B). Both of these sections require the prior offenses relied upon to be

---

4. The jury also convicted the defendant of simple assault which was included in the trial court's instructions as a lesser-included offense to sexual assault. The trial court apparently ignored this latter verdict as surplusage and no formal judgment or sentence was entered on the assault verdict. Although we affirm the judgments of conviction and sentences on the burglary and sexual assault charge, we deem it appropriate to set aside the assault conviction pursuant to A.R.S. § 13–4036.

felonies.[5] With respect to the defendant's sentence for sexual assault, the trial court used § 13–604(N).[6]

The record shows that the trial court on several occasions found the Missouri conviction to be a felony.

First, at the hearing on the use of the convictions for impeachment, the trial court asked counsel whether the defendant's priors were felonies.[7] Both the prosecutor and the defense counsel conceded that the priors were. The trial court's ruling permitting the use of these priors for impeachment purposes implies that he found them to be felonies.

Second, a trial court determines whether a prior conviction is a felony based upon the law of the sentencing state. *State v. Geiger*, 113 Ariz. 297, 552 P.2d 1191 (1976). The record shows that the trial court had read the Missouri statute that the defendant had violated. The statute specifically states that first degree sexual abuse is a felony in Missouri. Mo.Rev.Stat. § 566.100. This also implies that the trial court found the Missouri conviction to be a felony.

Finally, the trial court explicitly made this determination at the defendant's sentencing after defense counsel again raised this objection. We find no error in the procedure followed by the trial judge. The submission of the state's evidence of the Missouri conviction to the jury was proper, and the defendant's sentences were likewise properly enhanced.

■ The defendant's last objection concerning the use of his prior convictions is that neither his Missouri nor his Arizona conviction could be used to enhance his sentence because the state failed to present a factual basis for the convictions. In support of his assertion, the defendant relies on this court's decision in *State v. Johnson*, 142 Ariz. 223, 689 P.2d 166 (1984), and Rule 17.6, Ariz.R.Crim.P., 17 A.R.S. The ruling in *Johnson* concerned the requirements under the Rules of Criminal Procedure for accepting a guilty plea and the admission of the existence of prior convictions. In the present case, there was no admission of the prior convictions. The issue was tried and submitted to the jury. *Johnson* has no application to this appeal. The burden the state had when the defendant *denied* the existence of prior convictions was to prove beyond a reasonable doubt that the prior convictions existed and that the defendant was the person previously convicted. *State v. Nash*, 143 Ariz. 392, 694 P.2d 222, *cert. denied*, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985).[8] There was sufficient evidence submitted to the jury to support its finding, and we find no error.

## DEFENDANT'S REQUEST FOR A PRETRIAL LINEUP

Shortly after the attack, the police asked the victim to identify her assailant in a

---

**5.** A.R.S. § 13–604(D) states in part:

Except as provided in subsection G or N of this section or § 13–604.01, a person who is at least eighteen years of age or who has been tried as an adult and who stands convicted of a class 2 or 3 felony, and who has been previously convicted of two or more felonies, shall be sentenced to imprisonment for at least twice the sentence and not more than four times the sentence authorized by § 13–701 for the offense for which the person currently stands convicted....

For the relevant portion of § 13–604.02(B), see note 1, *supra.*

**6.** This section requires the trial court to impose a life sentence without the possibility of parole for 25 years where the defendant has been previously convicted of two or more serious offenses. Whether an out of state conviction constitutes a serious offense under § 13–604 is a legal question to be decided by the trial court. *State v. Ault,* 157 Ariz. 516, 759 P.2d 1320

(1988). The defendant's prior Arizona conviction for sexual assault constitutes a serious offense pursuant to A.R.S. § 13–604(O). We have also independently determined that the defendant's Missouri conviction would constitute child molestation in Arizona. A.R.S. § 13–1410. Child molestation is one of the dangerous crimes against children under A.R.S. § 13–604.01(K)(1)(d). Any dangerous crime against children is a serious offense pursuant to § 13–604(O).

**7.** Rule 609, Ariz.R.Evid., 17A A.R.S., permits prior felony convictions to be used for impeachment purposes.

**8.** The defendant's brief may also be read as suggesting that the state must prove the defendant committed these crimes. We reject this position. Our statute only requires the state to prove that the defendant has been previously convicted. A.R.S. § 13–604(N).

photographic lineup. The lineup displayed six different pictures, including the defendant's, which was number six. After glancing briefly at the picture, the victim pointed at photograph number three and stated, "[W]ell, this guy looks familiar." The victim was then asked to take her time and look at all the pictures. Thereafter, she pointed at the defendant's picture and stated, "This photo is very similar to photo number three. I can't tell the difference between them. It could be either of them."

Eight months after the alleged assault, the trial court held a *Dessureault* hearing. At the conclusion of the hearing, the defendant's counsel requested that the trial court order a physical lineup. Defense counsel maintained that any in-court identification was unduly suggestive and would constitute a one man show-up. *See State v. Williams*, 144 Ariz. 433, 698 P.2d 678 (1985) (holding one man show-up to be inherently suggestive). In support of this contention, defense counsel cited the victim's inability to positively identify the defendant at the photographic lineup, her in-court testimony that she was aware of where the defendant would be sitting during trial and that she knew he had a prior record for sexual assault. The trial court denied the request.

 A defendant has no constitutional right to a physical lineup. *State v. Rossi*, 146 Ariz. 359, 706 P.2d 371 (1985); *State v. Meeker*, 143 Ariz. 256, 693 P.2d 911 (1984). A request for a live lineup is left to the trial court's sound discretion and, absent an abuse of discretion, the trial court's ruling will not be disturbed on appeal. *Rossi*, 146 Ariz. at 363, 706 P.2d at 375; *State v. Ferguson*, 120 Ariz. 345, 586 P.2d 190 (1978).

 We find no error, fundamental or otherwise, in the trial court's ruling. The victim had ample opportunity to view the defendant before, during, and after the assault. The fact that the victim was unable to distinguish photograph number three from photograph number six does not indicate that her in-court identification would be suspect. As the trial court correctly noted, the difficulty that the victim had in identifying her assailant lay in identifying pictures that resemble the person she knew had raped her. In addition, we note that the assailant's identity was never really in issue. Juan Trujillo positively identified the defendant as the person he saw attacking the victim. Therefore, even if we were to assume that the trial court erred in refusing to grant a physical lineup, the error would be harmless. *Rossi*, 146 Ariz. at 363, 706 P.2d at 375.

## PREJUDICIAL EFFECT OF PRIOR CONVICTIONS

The defendant argues that the trial court erred in ruling that, if he decided to testify, the state could impeach him with his prior convictions. Because these prior convictions were the same or similar offenses as the principal offense, the defendant claims that allowing the jury to consider them would prejudically outweigh their probative value. Hence, the defendant did not testify.

 Rule 609, Ariz.R.Evid., 17A A.R.S., states in pertinent part:

(a) *General rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record, if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, and if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (2) involved dishonesty or false statement, regardless of the punishment.

When a trial court rules that a prior conviction may be admissible because its probative value outweighs its prejudicial effect, we will uphold that ruling absent an abuse of discretion. *State v. McNair*, 141 Ariz. 475, 687 P.2d 1230 (1984); *State v. Ennis*, 142 Ariz. 311, 689 P.2d 570 (App.1984). Furthermore, a defendant's decision not to testify waives any argument that the trial court erred when it permits impeachment by prior convictions. *State v. Schrock*, 149 Ariz. 433, 719 P.2d 1049 (1986); *State v.*

*Correll,* 148 Ariz. 468, 715 P.2d 721 (1986); *State v. Allie,* 147 Ariz. 320, 710 P.2d 430 (1985).

Initially, we note that the defendant's characterization of the facts is at odds with the record. Although the trial court ruled that the state could impeach the defendant with his two prior convictions, the trial court did not permit the prosecutor to reveal the nature of the convictions. We have recognized that potential prejudice to a defendant may be mitigated by prohibiting the prosecution from revealing the nature of the prior convictions. *State v. Williams,* 144 Ariz. 479, 482, 698 P.2d 724, 727 (1985). In addition, the defendant's decision not to testify waives any error on appeal. *Schrock, Correll, Allie, supra.* Nevertheless, the defendant urges us to reconsider this rule, arguing that it violates the due process clause of the federal constitution and his right to a jury trial under the Arizona constitution. We have examined the defendant's arguments on both these counts and find them to be insufficient to cause us to reject our previous decisions on the subject. We find no error in the trial court's ruling to allow the defendant's prior convictions to be used for impeachment.

## JURY INSTRUCTIONS

The defendant next argues that the trial court failed to properly instruct the jury on the burden of proof and the presumption of innocence. In response, the state argues that the defendant waived this argument by failing to object at trial. The defendant maintains that the court's omission constitutes fundamental error.

■ Ordinarily, the failure to object at trial to the lack of an instruction will waive the issue on appeal. *State v. Kinkade,* 140 Ariz. 91, 680 P.2d 801 (1984). Where, however, we determine the error to be fundamental, the defendant can raise it on appeal despite his failure to object in the trial court. *State v. Cannon,* 148 Ariz. 72, 790, 713 P.2d 273, 280 (1985). Fundamental error exists where the error goes to the foundation of the case or deprives the defendant of an essential right to his defense.

*State v. Allen,* 157 Ariz. 165, 170, 755 P.2d 1153, 1158 (1988).

■ With respect to the defendant's claim that the trial court erred when it instructed the jury on the state's burden of proof, the record shows that the trial court instructed the jurors as follows:

Since the state has the burden of proof beyond a reasonable doubt, the defendant has the right to rely upon a failure, if any, of the state to establish such proof.

The jury was then instructed by the court as to the meaning of "reasonable doubt":

Reasonable doubt, you have heard from what I have discussed in the instructions, is not a possible doubt or an imaginary doubt, but is one based on reason. It is doubt which may arise in your own mind only after a careful and impartial consideration of all of the evidence or lack of evidence as the case may be.

Defendant's objection to this instruction is not based on its form or its content. Instead, he argues that the trial court's failure to charge the jury at the trial's conclusion on the presumption of innocence renders this instruction meaningless. Hence, we turn to whether the omission of this instruction constitutes fundamental error.

The United States Supreme Court has stated that the failure to give a presumption of innocence instruction is not *per se* fundamental error. *Kentucky v. Whorton,* 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979). The omission must "be evaluated in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial." *Id.* at 789, 99 S.Ct. at 2090, 60 L.Ed.2d at 643.

■ After reviewing the record, we believe that the defendant's conviction survives the totality of the circumstances evaluation. Prior to hearing evidence, the trial

court instructed the jury that the charges against the defendant did not constitute evidence, the state must prove its case beyond a reasonable doubt, and the defendant was not required to prove his innocence. Furthermore, as the defendant appears to concede, the reasonable doubt instruction was, in and of itself, adequate.[9] This indicates that the jury was properly informed as to the state's burden of proof. Finally, the evidence against the defendant was overwhelming, leading us to conclude that the trial court's omission was harmless error.

### JUDGE PRO TEMPORE

■ The defendant contends that he was entitled to a trial by a regularly seated superior court judge. He cites no authority for this proposition, but maintains that he is entitled to a judge who is subject to retention by the voters of the state. He also asserts that a superior court judge has superior training to a judge *pro tem*, and that it is "imprudent" to permit the latter to preside over serious cases like the defendant's. Finally, he suggests that he need establish no prejudice because he is, by right, entitled to a new trial on these grounds.

■ The defendant's argument here is completely meritless. Not only has he waived this argument by failing to object, *Gordy v. State*, 262 Ind. 275, 315 N.E.2d 362 (1974) (if court in which matter was tried has subject matter jurisdiction, then challenges to a particular judge's qualifications to sit as a trial court judge are waived if not raised in trial court), but also the defendant's position is completely at odds with the Arizona Constitution.

The Legislature may provide for the appointment of members of the bar having the qualifications provided in § 22 of this article as judge pro tempore of courts inferior to the Supreme Court. When serving, any such person shall have all the judicial powers of a regular elected judge of the court to which he is appointed.

Ariz. Const. art. 6, § 31.

The constitution speaks clearly on this issue. The defendant's argument that prudence requires a regular elected superior court judge is without merit.

### MOTION TO SUPPRESS

After the victim and the Trujillos identified the defendant as the assailant, Mesa police officers went to the defendant's house to arrest him. Two officers approached the front door while a third officer covered the back.[10] The officer who knocked on the door asked the woman who answered if he could speak to the defendant. At this point, the defendant, who was seated in plain view on the living room couch, jumped up and ran toward the back of the house. Ignoring the officer's call to stop, the defendant ran out the back door with the officers in pursuit. The defendant was apprehended a block away from his house, his clothing was taken into custody, and it later provided physical evidence linking the defendant to the crime.

The defendant maintains that the clothing should have been suppressed because it was the fruit of an illegal, warrantless entry into his home. In essence, the defendant argues that, without a warrant, the officer could not legally enter his home, and any evidence seized is, therefore, inadmissible. The defendant further maintains that his flight from the house was prompted by police action, and the police should not be allowed to manufacture their own exigent circumstances to override the defendant's constitutional rights.

■ Absent exigent circumstances, police officers may not make a warrantless entry into a house to arrest a felon. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). We have recognized at least four situations which can

---

**9.** We note, in addition, that the trial court was not even required to define "reasonable doubt" in the discharge of its duties. *State v. Bracy*, 145 Ariz. 520, 703 P.2d 464 (1985).

**10.** This third officer did not enter the premises but stood outside the backyard fence and observed the back door.

be considered exigent: (1) response to an emergency; (2) hot pursuit; (3) probability of destruction of evidence; and (4) the possibility of violence. *State v. Ault*, 150 Ariz. 459, 463, 724 P.2d 545, 549 (1986).[11] We do not consider this list to be exhaustive, however.

Here, the defendant principally relies on *Ault I* in support of his position. In *Ault I*, two deputy sheriffs went to the defendant's house and asked the defendant to accompany them to the police station for questioning. As the defendant turned from the door to go get dressed, the deputies followed him into the house, despite being told they were not invited into the premises. Therein, the deputies seized a pair of tennis shoes which were later admitted into evidence. We held that the trial court erred when it failed to suppress this evidence because the officer's warrantless entry into the defendant's home was without proper justification. We stated:

> In the present case the deputies were not responding to an emergency and *fear of escape was virtually non-existent.* The deputies were positioned at the only operable door to the apartment and defendant had just volunteered to accompany the deputies to the station. There clearly was no hot pursuit or grave risk of violence articulated by the state which would allow warrantless entry.

*Id.* at 463, 724 P.2d at 549 (emphasis added).

We do not find that *Ault I* supports the defendant's position. As the quoted portion of *Ault I* indicates, fear of escape may be an exigent circumstance. Here, the record indicates that the defendant attempted to flee before the officers addressed him. We hold today that where the officers know that a suspect is fleeing or attempting to flee, a warrantless entry into a home is justified as an exigent circumstance if it is reasonably necessary to prevent the suspect's escape and if the state did not itself create the exigent circumstance. *See United States v. Cal-*

houn, 542 F.2d 1094 (9th Cir.1976) (fear that a suspect will escape is an exigent circumstance which may justify a warrantless entry to arrest unless it is created by the law enforcement officers); Note, *Exigent Circumstances For Warrantless Home Arrests*, 23 Ariz.L.Rev. 1171, 1182 (1981). Hence, we find the officers' warrantless entry into the defendant's home, and his subsequent arrest and seizure of his clothes, were not unlawful.

## ALLEGED PROSECUTORIAL MISCONDUCT

The defendant also brings to this court's attention the trial court's denial of his motion for mistrial premised upon the defendant's claim that the prosecutor, in closing argument, "misquoted" the defendant's counsel. In his opening statement, the defendant's counsel stated, "We'll show you during the course of this trial that the defendant did not burglarize the home and did not sexually assault anyone." In his closing argument to the jury, however, defense counsel claimed for the first time that the intercourse with the victim was consensual. In his rebuttal closing argument, the prosecutor stated the following:

> In my final talk with you I would like to begin with—I would like to point out to you, if you recall when Mr. Dairman [defendant's counsel] first addressed you before the evidence began, he told you that once the case was over *there would not be any evidence that his client had sexual intercourse with anyone that night...*

(emphasis added). 11/18/86 R.T. 81–82.

In response to the defendant's objection, the trial court reminded the jurors that counsel's opening and closing arguments were not to be considered as evidence.

Declaring a mistrial is an unusual remedy for trial error and should not be resorted to unless justice requires such a result. *Correll, supra.* Moreover, a motion for mistrial based on the ground of

---

**11.** The 1986 decision in *State v. Ault* will be cited as *Ault I* to distinguish it from the 1988 decision on Ault's second appeal.

counsel misconduct is addressed to the trial court's discretion, which is not disturbed on appeal unless plainly abused. *State v. Woods*, 141 Ariz. 446, 455, 687 P.2d 1201, 1210 (1984). We will not reverse a defendant's conviction unless he demonstrates that the prosecutor's remarks were improper and that they probably influenced the jury's verdict. *State v. Sullivan*, 130 Ariz. 213, 635 P.2d 501 (1981); *State v. Sustaita*, 119 Ariz. 583, 583 P.2d 239 (1978).

Even if we assume the prosecutor's statement to be improper, we do not find that it influenced the jury's verdict. The state presented overwhelming evidence against the defendant, making it unlikely that the prosecutor's "misquote" had any influence on the jury. The trial court did not abuse its discretion in denying the defendant's motion for mistrial.

## CONSECUTIVE SENTENCES

According to the defendant, the trial court violated A.R.S. § 13-116 when it sentenced him to consecutive sentences on the burglary and sexual assault convictions. A.R.S. § 13-116 provides in part:

An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent.

Defendant contends that imposing consecutive sentences in this case violates this section because the evidence used to prove intent to commit sexual assault is an essential component of the burglary conviction. Hence, the defendant argues, if you eliminate the evidence supporting intent to commit sexual assault from the sexual assault count, there is no evidence to support the burglary count.

Arizona uses a "identical elements" test to determine whether one act of a defendant has been punished more than once. *State v. Griffin*, 148 Ariz. 82, 713 P.2d 283 (1986). Under this test, the court must eliminate the evidence supporting the elements of one charge and determine whether the remaining evidence supports the elements of the other charge. *Id.*[12]

In *State v. Rybolt*, 133 Ariz. 276, 650 P.2d 1258 (App.1982), *overruled on other grounds, State v. Diaz*, 142 Ariz. 119, 688 P.2d 1011 (1984), our Court of Appeals addressed the very issue raised by the defendant here. In rejecting the appellant's claim that consecutive sentences for sexual assault and burglary violated A.R.S. § 13-116, the Court of Appeals reasoned:

In the instant case, the various states of mind which underlay appellant's actions during the time of the offenses are discrete and distinguishable. First, when he entered or remained in the residences with the intent to commit theft or any felony (e.g., sexual assault) therein, he was responsible for the burglaries. A.R.S. § 13-1508. Second, when he *thereafter* intentionally or knowingly engaged in non-consensual sexual intercourse or oral sexual contact with the victims, he was responsible for sexual assault. A.R.S. § 13-1406. We find no violation of A.R.S. § 13-116.

*Id.* at 281, 650 P.2d at 1263 (emphasis original).

We are in full agreement with the Court of Appeals' analysis and apply it to the case at bar. The defendant here was guilty of burglary when he unlawfully entered the victim's house with the intent to commit sexual assault. By actually committing the sexual assault, he committed a separate crime which is supported by separate evidence. We reject the defendant's argument.

## EQUAL PROTECTION

The defendant finally urges this court to vacate his sentence and remand for resentencing because A.R.S. § 13-604.02 unconstitutionally denies him

12. The elements of burglary in the second degree are (1) unlawfully entering or remaining, (2) in a residential structure, (3) with the intent to commit any theft or felony therein. A.R.S. § 13-1507(A). The elements of sexual assault are (1) intentionally or knowingly, (2) engaging in sexual intercourse or oral sexual contact, (3) with any person, (4) without that person's consent. A.R.S. § 13-1406(A).

his right to equal protection. Because he was on probation at the time of the crime, this section requires the defendant to serve all of the 20 year sentence imposed on the burglary conviction. *See* Note 3, *supra.* In contrast, there is no such requirement for those who are not on probation when they commit the same offense. We have considered and rejected this constitutional challenge on other occasions, and we find nothing irrational about requiring those on probation to stay out of trouble or face a greater penalty should they fail. *Allie, supra; Williams,* 144 Ariz. at 444, 698 P.2d at 689. We reject the defendant's argument.

### CONCLUSION

We have also examined the record for fundamental error and find none. The judgments of conviction and the sentences are affirmed.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.