NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

TED DEAN COOK, *Appellant*.

No. 1 CA-CR 13-0715
FILED 11-18-2014

Appeal from the Superior Court in Mohave County
No. S8015CR201200809
The Honorable Steven F. Conn, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Colby Mills
*Counsel for Appellee*

Mohave County Legal Advocate's Office, Kingman
By Barbara Cook-Hamp, Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Presiding Judge Patricia A. Orozco delivered the decision of the Court, in which Judge Randall M. Howe and Judge Maurice Portley joined.

---

**O R O Z C O, Judge**:

¶1        Ted Dean Cook appeals his convictions and sentences on the grounds of error in the denial of his motion to suppress and insufficiency of the evidence.  For the reasons that follow, we affirm.

¶2        A grand jury indicted Cook on one count of possession of a dangerous drug (methamphetamine) for sale and one count of possession of a dangerous drug (carisoprodol)[1] and two counts of possession of drug paraphernalia. A jury found Cook guilty and he filed a timely notice of appeal.  Cook argues the trial court abused its discretion in denying his motion to suppress and there was insufficient evidence to support the verdicts.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(2), 13-4031, and 13-4033(A) (West 2014)[2].

## I.        Denial of Motion to Suppress Evidence

¶3        Cook argues that the trial court abused its discretion in denying his motion to suppress the evidence seized after his arrest.  Cook argues that the initial search warrant and the later amended search warrant correcting his address lacked probable cause because: (1) the informant was insufficiently reliable and (2) police illegally entered Cook's backyard before the amended warrant was issued.  In reviewing the denial of a motion to suppress, we only review the evidence presented at the suppression hearing, *State v. Blackmore*, 186 Ariz. 630, 631, 925 P.2d 1347, 1348 (1996*),* viewed in the light most favorable to sustaining the trial court's ruling.  *State v. Hyde*, 186 Ariz. 252, 265, 921 P.2d 655, 668 (1996*).*

---

[1] Carisoprodol is a schedule IV controlled substance and is also known by its brand name, Soma. *See* A.R.S. § 36-2515(A)(5)(a).

[2] We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

¶4 By consent of the parties, the trial court did not hear testimony on the motion to suppress, but ruled after reviewing the initial warrant and the amended warrant with the correct address and hearing arguments on the facts outlined in the briefing, which the parties agreed were not in dispute. The undisputed facts were as follows: A narcotics detective (Harris) received information in May 2012 that Cook was selling methamphetamine. Between June 15 and June 17, 2012, a confidential informant told Harris that he observed Cook in possession of a large quantity of methamphetamine at Cook's residence. The informant stated that Cook lived at 1635 Talc Plaza, Bullhead City. Harris confirmed that 1635 Talc Plaza was listed as Cook's address on the police computer system. Based on Harris' affidavit, a municipal court judge issued a search warrant on June 18, 2012, allowing a search of Cook's person, the residence at 1635 Talc Plaza, and Cook's vehicle for methamphetamine and related evidence.

¶5 On June 18, 2012, at around 2 p.m., police executed a search warrant at 1635 Talc Plaza and discovered that Cook no longer lived there. The occupant of 1635 Talc Plaza identified himself as Ted Cook, Sr. and told police that his son (Cook) moved next door to 1631 Talc Plaza, although he still had access to the house at 1635 Talc Plaza and continued to receive mail at that address. As Harris headed to the front of 1631 Talc Plaza, another officer saw Cook attempting to flee from the rear of 1631 Talc Plaza toward the back fence. The officer jumped the fence into the backyard of 1631 Talc Plaza, identified himself as a police officer, and chased Cook, ordering him to halt. The officer saw Cook drop a small black bag as he ran toward the back fence. After a chase and a struggle, the officer successfully handcuffed Cook. The officer discovered 22.5 grams of methamphetamine and related paraphernalia in the black bag Cook dropped.

¶6 An hour later, a municipal court judge issued an amended search warrant authorizing a search of 1631 Talc Plaza and Cook's vehicle. Inside Cook's residence at 1631 Talc Plaza, police seized a scanner and a security camera and monitor. Inside the trunk of the vehicle, police discovered a bottle containing more than twenty five carisoprodol pills and a digital scale.

¶7 The trial court ruled that the municipal court judge had sufficient evidence to conclude there was probable cause to search the residence at 1635 Talc Plaza, notwithstanding the subsequent discovery that the informant mistakenly identified it as Cook's residence. The trial court found the search warrant sufficiently established the reliability of the

informant. The court noted that the later discovery that Cook no longer lived at 1635 Talc Plaza "doesn't change the fact that he could have been at that address with methamphetamine that the informant saw." The trial court further concluded that the warrant authorizing the search of Cook's person could be executed "in whatever yard they found him. They were authorized to jump a fence to get to where he was, because they had a warrant that authorized them to do that." The trial court finally concluded that the amended warrant authorizing the search of 1631 Talc Plaza and Cook's vehicle was supported by probable cause and there was no basis to exclude evidence obtained as a result of the warrant's execution.

¶8        In reviewing a trial court's denial of a motion to suppress, we give deference to its factual findings, but review de novo whether the Fourth Amendment was violated. _State v. Gonzalez-Gutierrez_, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996). We will affirm if the ruling is legally correct for any reason. _State v. Cañez_, 202 Ariz. 133, 151, ¶ 51, 42 P.3d 564, 582 (2002).

### A.        Probable Cause

¶9        Cook argues that insufficient probable cause supported the initial warrant, as well as the amended warrant, because the warrants' affidavit failed to establish the informant's reliability. In determining whether probable cause exists to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." _Illinois v. Gates_, 462 U.S. 213, 228 (1983). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." _Id._ at 238-39 (internal punctuation and citation omitted).

¶10        The detective avowed in the affidavit that a confidential informant had "observed Ted Cook to be in possession of a large quantity of methamphetamine," at an address the detective independently confirmed was Cook's residence. The detective further avowed that he considered this information to be true not only because the informant had participated in controlled drug buys on five previous occasions, but "within the past several months the confidential informant has also given information to [the] affiant and fellow officers about narcotics trafficking in the Mohave County area, which has been verified either through [the] affiant's personal knowledge or through short investigations." The proven

reliability of the confidential informant and the informant's observation of Cook having possession of a large quantity of methamphetamine supplied a substantial basis to conclude that probable cause existed to issue the initial and amended search warrant correcting the address. *See id.* Therefore, we find the trial court did not abuse its discretion or err as a matter of law in refusing to suppress the evidence on this ground.

### B.      Search warrant for Cook

¶11        Cook also argues that the police officer violated his state and federal constitutional rights by entering his backyard and arresting him without an arrest warrant, a warrant to search his actual residence, or a valid exception to the warrant requirement. However, the officer had a warrant to search Cook and it was undisputed at the suppression hearing that the officer recognized the person running through the backyard as Cook.

¶12        Furthermore, exigent circumstances were present. The officer was part of the team that discovered that Cook lived next door to the house specified in the initial search warrant when he saw Cook fleeing from the house next door. Because the initial search warrant was issued on probable cause to believe that Cook had methamphetamine in his residence, vehicle, or on his person, the officer had ample reason to believe that Cook was fleeing to evade the police and dispose of the methamphetamine. Police do not create exigent circumstances if they do "not violate or threaten to violate the Fourth Amendment prior to the exigency." *Kentucky v. King*, 131 S. Ct. 1849, 1863 (2011); *see also State v. White*, 160 Ariz. 24, 32-33, 770 P.2d 328, 336-37 (1989) (rejecting argument that police created exigency by knocking on front door and asking to speak to defendant and distinguishing *State v. Ault*, 150 Ariz. 459, 463, 724 P.2d 545, 549 (1986)). The officer had a legal right to be where he was when he saw Cook fleeing his residence. The exigency arose before the officer entered Cook's backyard and was prompted by the sight of Cook fleeing. Cook, not the officer, created the exigent circumstance. This exigency also justified the officer's warrantless entry of Cook's backyard. *See White*, 160 Ariz. at 32-33, 770 P.2d at 336-37. Therefore, Cook's constitutional rights were not violated.

## II.    Sufficiency of Evidence

¶13        Cook also argues that insufficient evidence supported his convictions for possession of methamphetamine for sale and possession of carisoprodol, both dangerous drugs. We review de novo the sufficiency of

the evidence to support a conviction. *State v. West*, 226 Ariz. 559, 562, ¶15, 250 P.3d 1188, 1191 (2011*)*. We view the facts in the light most favorable to upholding the jury's verdict, and resolve all conflicts in the evidence against the defendant. *State v. Girdler*, 138 Ariz. 482, 488, 675 P.2d 1301, 1307 (1983*)*.

### A.     Possession of Methamphetamine for Sale

¶14     Cook argues that the trial transcript shows that the criminalist testified the methamphetamine actually weighed only 2.5 grams, an amount far too small to support a conviction of possession for sale. The transcript does reflect that the criminalist testified that the methamphetamine at issue weighed 2.5 grams, rather than 22.5 grams. The remainder of the record, however, including the parties' examination of other witnesses, the court's ruling on Cook's motion for judgment of acquittal, the parties' closing arguments, and the weight of the methamphetamine identified on the exhibit list -- makes clear that the methamphetamine actually weighed 22.5 grams. On this record, the most plausible explanation for the single reference to the weight of the methamphetamine as 2.5 grams is that it was simply a mistake. *See State v. Diaz*, 223 Ariz. 358, 360–62, ¶¶11-19, 224 P.3d 174, 176-78 (2010) (holding that defendant failed to meet his burden to establish that only eleven jurors deliberated, "[w]hen the uncorrected record is considered as a whole"); *State v. Bowles*, 173 Ariz. 214, 216, 841 P.2d 209, 211 (App. 1992) (holding that because the remaining record was clear, it was not necessary to remand for resentencing to resolve a discrepancy between the oral pronouncement of sentence and minute entry).

¶15     Alternatively, Cook argues that even if the methamphetamine in fact weighed 22.5 grams, the evidence was insufficient to support a conviction of possession for sale in light of the absence of evidence of a large scale, boxes of unused baggies, drug ledgers, or cash. We disagree. Two police officers with training and experience in drug investigations testified that the large amount of methamphetamine, the scale for weighing out small amounts of the drug, the scanner, and the security camera and monitor were indicators that Cook was selling drugs. One officer testified that the most common usage dose was one tenth of a gram of methamphetamine, meaning that 22.5 grams of methamphetamine would provide 225 doses. He also testified that the absence of unused baggies, a drug ledger, and large amounts of cash did not mean that Cook was not selling drugs. On this record, we find sufficient evidence supported the conviction for possession of methamphetamine for sale.

### B. Possession of Carisoprodol

**¶16**        Cook also argues the evidence was insufficient to support the conviction for possession of the dangerous drug carisoprodol because the pills did not come in a prescription bottle labeling them as such, no lab test was conducted, and the officers who identified the pills at trial had no qualifications to do so.  The identity of an illegal substance may be proven by circumstantial evidence.  *State v. Jonas*, 162 Ariz. 32, 34, 780 P.2d 1080, 1082 (App. 1988).  Both officers testified that they identified the pills as carisoprodol by consulting a book they referred to as the "pill bible."  The "pill bible" was used by pharmacists and considered a reliable way to identify pills by "color, shape and markings that are on the pills themselves."  One of the officers testified that he received training at which the "pill bible" was discussed as the means by which pills are typically identified, and he had confirmed on several occasions with a lab technician or a pharmacist that his identification of pills using this reference volume was correct.  Defense counsel did not object and these testimonies were sufficient to support the conviction.  *See id.*

## III.    Conclusion

**¶17**        For the foregoing reasons, we affirm Cook's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh