706 P.2d 371

**STATE of Arizona,**
**Appellee/Cross-Appellant,**

v.

**Richard Michael ROSSI,**
**Appellant/Cross-Appellee.**

No. 6326.

Supreme Court of Arizona,
En Banc.

Sept. 24, 1985.

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Crim. Div., Diane Ramsey, David Cole, Asst. Attys. Gen., Phoenix, for appellee/cross-appellant.

J. Douglas McVay, Phoenix, for appellant/cross-appellee.

GORDON, Vice Chief Justice.

After a jury trial, defendant, Richard Michael Rossi, was adjudged guilty of first degree murder, attempted first degree murder and first degree burglary, all dangerous and nonrepetitive felonies. The trial court sentenced defendant to death on the murder conviction, and terms of incarceration for the attempted first degree murder and first degree burglary convictions. This Court has jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 13–4031.

On the afternoon of August 29, 1983, defendant went to the house of Harold August to sell him a typewriter. August, age 66, bought, repaired and sold typewriters out of his home where he kept a large amount of cash. Earlier that day defendant had confided to his friend, Bill Nelson, that he was going to August's house on the pretext of selling August a typewriter but planned to kill him, take his money, and kill

anybody who got in his way. After apparently working out a deal to sell August a typewriter, defendant followed August to his bedroom where August kept his money. Defendant hit August with a blackjack and then shot him twice in the chest. August fell against the bedroom wall and pleaded with defendant stating, "You have my money, you shot me, what more do you want?" Thereupon, defendant leveled the gun at August's head and fired a fatal shot into his mouth.

During this time, a next-door neighbor, Mrs. Nutter, heard voices and the sound of three gunshots coming from Mr. August's house. A good friend of the Augusts, she went to their house to investigate. In Augusts' driveway she noticed a bronze metallic car with the hatchback open and the motor running. Mrs. Nutter entered the Augusts' house and observed a stranger. She asked the man, "Where's Harold?" to which he responded, "In the back." As she turned to go down the hallway she was hit in the back of the head and fell to the floor. Defendant put the gun to Nutter's chest and fired twice. He assumed from her moaning that she would die and he left. However, Mrs. Nutter survived.

Defendant returned home where he had Nelson count the stolen money, and gave Nelson three spent bullets as "souvenirs" of the crimes. Later that day he gave his shirt to his live-in girl friend with instructions to check it for bloodstains and to throw the shirt away if it contained blood.

## DEFENDANT'S REQUEST FOR A LIVE LINEUP

Defendant was initially arrested for the crimes herein on August 29, 1983. The next day in the hospital, Nutter was shown a photo lineup. She picked out defendant's photograph stating, "Boy, it sure looks like him." Seven months after this photo lineup and a few weeks before trial, defendant requested a live lineup. The trial judge denied defendant's request. Defendant now claims that the trial judge committed reversible error.

Defendant has no constitutional right to a physical lineup. *State v. Meeker,* 143 Ariz. 256, 693 P.2d 911 (1984). Photographic lineups are frequently used and commonly adopted as a means of identification. *See State v. Taylor,* 27 Ariz.App. 330, 554 P.2d 926 (1976). A request for a live lineup is left to the sound discretion of the trial court and absent an abuse of discretion, the trial court's ruling will not be disturbed on appeal. *State v. Ferguson,* 120 Ariz. 345, 586 P.2d 190 (1978).

We find no abuse of discretion. There is no indication in the record that the photo lineup procedure was suggestive. Defendant does not point to any features in the photo which differ from his likeness, and after reviewing the photo we do not see any aberrations or distortions in it. Additionally, the photographic lineup took place one day after the crime when the victim's memory was still fresh. This lineup was reliable. *Id.* at 348, 586 P.2d at 193 ("the law is primarily concerned that the identification process be reliable").

On the other hand, defendant's requested lineup would have been unreliable. Defendant's request for a lineup came seven months after the crime. At that time defendant's appearance had radically changed. Defendant had gained about sixty pounds, shaved off his moustache, and cut his hair and sideburns much shorter. His skin tones had also changed. Under these circumstances, we cannot see how the requested live lineup would have added to the reliability of the victim's identification. We find no error.

Even if the trial court erred in failing to allow defendant to be viewed in a live lineup, such error was harmless and did not prejudice defendant as the witness was not able to positively identify the defendant at trial. *State v. McVay,* 127 Ariz. 450, 622 P.2d 9 (1980) (unless there is a reasonable possibility that improperly admitted evidence contributed to conviction, reversal is not required). Additionally, the victim's degree of doubt was extensively brought out on cross-examination as well

as direct examination. We find no prejudice.

## LIMITATION OF CROSS–EXAMINATION

Defendant next contends that the trial court improperly limited his right to cross-examine the police officer who conducted the photo lineup when the trial judge sustained the objection to the following question.

> "Q. Can you tell me why, after Mrs. Nutter was physically capable of doing so, why she was not asked to pick Mr. Rossi out of a physical lineup?
> MR. LYNCH: Your honor, I'm going to object to that. There are a lot of reasons why.
> THE COURT: Sustained."

 In assessing defendant's right to cross-examine, the trial court has considerable discretion in determining the relevance and admissibility of the evidence sought. *State v. Starks*, 122 Ariz. 531, 596 P.2d 366 (1979). In order to find error in the trial court's restriction of cross-examination, this court must find that the trial court abused that discretion. *State v. Baca*, 102 Ariz. 83, 425 P.2d 108 (1967). Evidence is relevant if it has any tendency to prove a material fact in issue. Rule 401, Arizona Rules of Evidence, 17A A.R.S.; *State v. Adamson*, 136 Ariz. 250, 665 P.2d 972 (1983), *cert. denied* 464 U.S. 865, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983). In this case defendant's question relating to a subsequent live lineup was not relevant. As noted above, defendant was not entitled to a physical lineup. *State v. Ferguson, supra.* Therefore, the reason that one was not performed is not material. Furthermore, defendant did not make a live lineup a contested issue because he did not timely request one. The physical lineup he did request came seven months after the photo

lineup when defendant's appearance had changed so drastically that the live lineup would not have been relevant.[1]

## INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that trial counsel was ineffective during the sentencing stage of trial. Defendant argues that several facts and arguments should have been brought to the attention of the probation officer during the preparation of his presentence report and of the trial judge during sentencing. Specifically, defendant contends that trial counsel did not: (1) point out the paucity of evidence supporting the two aggravating factors: that defendant knowingly created a grave risk of death to another person, and that the offense was committed in an especially heinous, cruel and depraved manner, (2) point out defendant's clean record, (3) argue that the mitigating factors outweighed the aggravating circumstances, and (4) emphasize that the prosecutor conceded the "grave risk of death" aggravating factor did not exist.

 In Arizona, to prove ineffectiveness of counsel the defendant must establish that counsel's representation was not reasonable considering all the circumstances, and that counsel's deficient performance prejudiced the defendant. *State v. Nash*, 143 Ariz. 392, 694 P.2d 222 (1985). The same standard is applicable to allegations of ineffective assistance of counsel at the sentencing stage. *See State v. Roscoe*, 145 Ariz. 212, 700 P.2d 1312 (1984). In this case we do not find that defense counsel's performance was deficient where the trial judge was fully apprised of the arguments in favor of mitigation.

 Contrary to defendant's contention, defendant's minimal criminal record was noted twice in the presentence report,

---

**1.** Defendant also contended that the prosecutor did not state the grounds for his objection. Generally, counsel must state the specific grounds for the objection. Rule 103, Arizona Rules of Evidence, 17A A.R.S. If the trial judge sustains a general objection and excludes evidence, however, the ruling will be upheld if any

grounds existed for the exclusion. Cleary, McCormick on Evidence § 52, p. 116 (2d ed. 1972); 88 C.J.S. Trial § 124b, pp. 250–251 (1955); 1 Wigmore, Evidence § 18, p. 827 (Tillers rev.1983). As determined above, we believe the question was irrelevant.

and by counsel at the presentence hearing. The state expressly conceded that the "grave risk of death" aggravating factor did not exist. Defense counsel need not point out matters of which the judge is already apprised.

As to the mitigating factors, the defense attorney initially argued in his sentencing memorandum that two mitigating factors existed. Counsel obtained the appointment of two medical experts to diagnose and evaluate defendant's mental condition at the time of the crime. The doctors' reports, however, did not bolster the existence of the two mitigating factors. Thereafter, defense counsel at the presentence hearing argued for a sentence less than death based on defendant's "character, propensities and record," arguing that defendant had "no previous criminal record," that "he had excellent work habits," that any bad habits defendant had did not involve "any sort of violence, anger, hurt to anybody else," and that defendant did not repeat his conduct later when he had another opportunity. Counsel argued that defendant would from now on follow his nonviolent past conduct. We find this change in strategy by counsel reasonable in light of the paucity of alternatives. *See, e.g., State v. McDaniel,* 136 Ariz. 188, 665 P.2d 70 (1983) (when defendant is being sentenced for first degree murder, sentencer must consider as mitigating circumstances any aspect of defendant's character).

## AGGRAVATING CIRCUMSTANCES

It is well settled that this Court will independently review the facts that establish the presence or absence of aggravating and mitigating circumstances. *State v. Richmond,* 114 Ariz. 186, 560 P.2d 41 (1976), *cert. denied,* 433 U.S. 915, 97 S.Ct. 1988, 53 L.Ed.2d 1101 (1977). The trial judge found the murder was committed in an especially cruel manner. Defendant submits that the facts do not support the trial court's finding. We disagree. Cruelty involves the mental and physical distress suffered by the victim. *State v. Gillies,* 135 Ariz. 500, 662 P.2d 1007 (1983)

(Gillies I). The record indicates that August was in pain before his ultimate death. The defendant initially fired two shots at the victim. The defendant used ammunition that was designed to inflict greater tissue damage than ordinary bullets. While the first shot just grazed August, the second shot entered his chest. The victim remained conscious for a short time thereafter.

The victim also had time to reflect as to the uncertainty of his fate. *See State v. Steelman,* 126 Ariz. 19, 612 P.2d 475 (1980). Before defendant fired the fatal shot, the victim leaned against his bedroom wall and pleaded with defendant, stating "You have my money, you shot me, what more do you want?" This evinces the victim's mental anguish.

The trial judge also found that the murder had been committed in an especially heinous and depraved manner. We agree. Heinous and depraved involve the mental state and attitude of the offender as reflected by his words and actions. *State v. Richmond,* 136 Ariz. 312, 666 P.2d 57 (1983), *cert. denied,* 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983). The evidence shows that defendant was totally without regard for human life. As mentioned, defendant used special bullets which he knew were designed to inflict greater tissue damage on a human body. After the murder defendant bragged to friends about his murderous act. Additionally, defendant gave three of the spent bullets from the murder as "a souvenir" to his friend Nelson. *Cf. State v. Clark,* 126 Ariz. 428, 616 P.2d 888 (1980), *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). Defendant also relished the murderous act. *See State v. Jeffers,* 135 Ariz. 404, 661 P.2d 1105 (1983), *cert. denied,* 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983). Defendant shot August twice in the chest and then leveled the gun at the victim's head and shot him in the mouth. Later defendant stated "that the bullets did not make as big a hole as they were supposed to." The senselessness of the act and helplessness of the victim are also

factors indicating the defendant's heinous and depraved state of mind. *State v. Gretzler*, 135 Ariz. 42, 659 P.2d 1 (1983), *cert. denied*, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 32, 77 L.Ed.2d 1452 (1983). August, age 66 and in failing health, was not in a position to thwart the robbery, and defendant could have easily escaped without firing the final fatal shot.

### DEATH PENALTY ISSUES

■ Defendant argues that the statutory aggravating factors "pecuniary gain" and "heinous, cruel or depraved" are unconstitutionally vague. *See* A.R.S. § 13–703(F)(5) and (6). These contentions have been previously rejected by this Court. *See State v. Nash, supra* (pecuniary gain aggravating factor not arbitrary or vague); *State v. Harding*, 137 Ariz. 278, 670 P.2d 383 (1983) (Gordon, J., specially concurring) (cruel, heinous or depraved aggravating factor not unconstitutionally vague).

■ Defendant next contends that the Arizona death penalty statute, A.R.S. § 13–703, is unconstitutional because it lacks standards for evaluating aggravating and mitigating circumstances. This argument similarly has been rejected. *State v. Gillies*, 142 Ariz. 564, 691 P.2d 655 (1984), *cert. denied*, — U.S. —, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985) (Gillies II). Defendant contends that Arizona's death penalty scheme is unconstitutional because it requires imposition of the death penalty when one aggravating circumstance exists and there are no mitigating factors. We have previously considered and rejected this argument. *See State v. Bracy*, 145 Ariz. 520, 703 P.2d 464 (1985); *State v. Jordan*, 137 Ariz. 504, 672 P.2d 169 (1983) (Jordan III).

■ Defendant argues that the Arizona death penalty statute is unconstitutional because (1) the death penalty is cruel and unusual; (2) the jury takes no part in the sentencing determination; (3) the prosecutor has the discretion to decide in which cases the death penalty will be sought; (4) the burden of proof is placed upon the defendant to prove mitigating factors; and (5) the death penalty is "arbitrary, capriciously and freakishly imposed." Defendant's appellate counsel cites no authority to support the contentions. These contentions have all been previously considered and rejected in *State v. Bracy, supra*, and we do so again today.

### AGGRAVATING CIRCUMSTANCE: GRAVE RISK OF DANGER

■ Defendant argues there is no support in the record for the trial court's finding of the aggravating circumstance that defendant knowingly created a grave risk of death to another person in the commission of the offense. *See* A.R.S. § 13–703(F)(3). The state agrees with defendant that this aggravating circumstance was not present. We also do not find it to exist in this case, as Mrs. Nutter was an intended victim of the crime, not a bystander in the zone of danger during defendant's murderous act. *See State v. Bracy, supra; State v. McCall*, 139 Ariz. 147, 677 P.2d 920, *cert. denied*, — U.S. —, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984).

### MITIGATING FACTORS

In sentencing defendant, the trial court considered evidence supporting two mitigating factors relating to A.R.S. § 13–703(G)(1) and (2) which read:

"G. Mitigating circumstances shall be any factors proffered by the defendant or the state which are relevant in determining whether to impose a sentence less than death, including any aspect of the defendant's character, propensities or record and any of the circumstances of the offense, including but not limited to the following:

1. The defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was *significantly impaired*, but not so impaired as to constitute a defense to prosecution.

2. The defendant was under *unusual and substantial duress*, although not

such as to constitute a defense to prosecution."

(emphasis added)

The trial court entered a special verdict discussing these mitigating factors:

"3. The Court further finds as mitigating circumstances:

a. The defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution. The Court finds this not to be a mitigating factor.

b. The defendant was under unusual and substantial duress, although not such as to constitute a defense to prosecution. The Court finds this not to be a mitigating factor."

Defendant contends that the special verdict and record demonstrate that the "trial court did not understand the meaning and operation of the statutory scheme for finding the existence of mitigating circumstances and the evaluation and weighing of those circumstances." We agree.

 In order for a sentencing judge to find that voluntary intoxication constitutes a mitigating circumstance under A.R.S. § 13–703(G)(1) there must be evidence that defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was *significantly impaired.* *State v. Woratzeck,* 134 Ariz. 452, 657 P.2d 865 (1982). Likewise, according to A.R.S. § 13–703(G)(2) to find that defendant was under duress at the time of the crime, such duress must be *unusual and substantial.* Once the trial judge finds that defendant's capacity was significantly impaired or that defendant was under unusual and substantial duress, a mitigating factor arises which is then weighed against any aggravating circumstances that the trial judge may find to determine whether mitigating factors are sufficiently substantial to call for leniency. *See, e.g., State v. Knapp,* 125 Ariz. 503, 611 P.2d 90 (1979) (court not required to consider aggravating and mitigating factors of equal significance). The

trial judge does not need to find that the defendant's capacity was impaired to such a degree that it would have constituted a defense to the prosecution. *See State v. Gillies* (Gillies I), *supra* (defendant need not be so impaired as to constitute a defense to prosecution). *But see State v. Woratzeck, supra* (fact that defendant was to some degree intoxicated at time he committed crime was not, by itself, a mitigating factor). Nor does he need to find that defendant's duress would have constituted a defense to the prosecution.

 After reading the discussion between the trial judge and the prosecutor during the sentencing hearing, it seems that the trial judge thought that defendant's impairment under A.R.S. § 13–703(G)(1) and defendant's duress under A.R.S. § 13–703(G)(2) must have been to such a degree as to constitute a defense to the prosecution to be a mitigating factor. The following excerpt from the sentencing transcript bears this out.

"MR. LYNCH: No. Now, I have a couple of questions about it. Did you find that subsection G–1 and –2, that there were those mitigating factors?

THE COURT: Read what they are and I can tell you.

MR. LYNCH: The defendant's capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of law was significantly impaired.

THE COURT: Yes, but not such as to constitute a defense.

MR. LYNCH: Well, if that's the case, then that's a mitigating factor.

THE COURT: Certainly, but when you say it's not sufficient to constitute a defense, that's how you cover it.

MR. LYNCH: Well, if he has that, but it's not enough to be a defense, then it would be a mitigating factor.

THE COURT: You read it, I don't know what the problem is. What's your problem?

MR. LYNCH: Well, if his capacity to appreciate what he is doing is affected

but not so much that it would be a defense to the crime, that's a mitigating factor and it's the State's position his capacity to appreciate the wrongfulness of the crime was not affected; that would not be a mitigating factor.

THE COURT: Can't I read them? Will that help you? I went over them fast, it was too fast for you to follow them.

MR. LYNCH: Right. I would submit that both paragraphs one and two would not be applicable and that they would not be mitigating factors.

THE COURT: Let me reread it.

The Court finds as a mitigating circumstance that the defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirement of law was significantly impaired, but not so impaired as to constitute a defense to prosecution.

The next one, the defendant was under unusual and substantial duress, although not such as to constitute a defense to prosecution?

Does that cover it?

MR. LYNCH: Can we go into chambers?

THE COURT: Yes.

(Whereupon, proceedings convened in chambers:)

MR. LYNCH: Okay. As I read Section 703(G)(1) and (2), these would be defenses and in trial if they, you know, if these were defenses in trial, then they would be defenses in trial, but the way they are now, if his capacity to appreciate the wrongfulness of his conduct is impaired, that is a mitigating factor, even if it's not enough to be a defense in trial.

If he is under substantial duress, which is not a defense in trial, that's a mitigating factor and the way it sounds out there, what you're saying is that you're finding that these do—that these are, in fact, true and therefore it makes it sound like you're finding they're mitigating factors, and I don't think that's what you mean to do, do you?

THE COURT: *Well, to be mitigating it would have to be effective as a defense."*
(emphasis added)

Because we believe the trial judge used the wrong standard for determining and applying mitigating factors, we must vacate defendant's death sentence and remand for resentencing.

## OTHER MITIGATING FACTORS

Defendant next contends that he established as a mitigating factor that he could be rehabilitated during a life sentence. The trial court disagreed with defendant finding that "defendant has failed to prove by a preponderance of the evidence that he is rehabilitable."

■ Defendant has the burden of proving any mitigating factors by a preponderance of the evidence to avoid imposition of the death sentence. *State v. Jordan,* 126 Ariz. 283, 614 P.2d 825, *cert. denied,* 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980) (Jordan II). Any aspect of defendant's character or record and any circumstances of the offense can be proffered by defendant as a mitigating factor. *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *State v. Watson,* 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied,* 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979). Defendant introduced his lack of a prior criminal record and letters from friends and relatives on his behalf stating that he was a gentle person and not predisposed to violence.

■ While the record does not indicate defendant had a record of prior violent felonies, it does show defendant had been arrested several times for theft, drug usage, possession of a firearm and forgery. After the crimes, defendant showed no remorse but instead "regretted that Mrs. Nutter hadn't died" and "wished that he had finished her off." He tried to get one of his friends to kill Mrs. Nutter before trial. As discussed before, defendant relished his murderous act, bragging about the details to his friends. The fact that numerous persons wrote letters on defendant's behalf does not establish mitigation. *See State v. Tison,* 129 Ariz. 546, 633 P.2d 355, *cert. denied,* 454 U.S. 960, 102 S.Ct.

499, 70 L.Ed.2d 376 (1981), *reh'g denied,* 459 U.S. 1024, 103 S.Ct. 391, 74 L.Ed.2d 520 (1982). We do not believe that defendant proved by a preponderance of the evidence his ability to be rehabilitated as a mitigating factor.[2]

## VOIR DIRE OF TRIAL JUDGE

 Defendant argues that he should have been allowed to voir dire the trial judge to probe for possible bias or prejudice on the part of the judge so that he could intelligently exercise his peremptory challenge or challenge for cause. As the state correctly points out, defendant never raised this issue at the trial court. Defendant may not raise an issue for the first time on appeal. *State v. Acree,* 121 Ariz. 94, 588 P.2d 836 (1978). Nor did defendant either expressly or impliedly object to the judge on the ground of bias or prejudice. An objection to the trial judge sitting on the case may not be raised in the first instance on appeal. *See State v. Munoz,* 110 Ariz. 419, 520 P.2d 291 (1974). Defendant, therefore, waived this issue.

We have reviewed the record for fundamental error, A.R.S. § 13–4035, and having found none, we affirm defendant's convictions on all counts and his sentences in Count I, burglary in the first degree, and Count III, attempted first degree murder. We remand for resentencing on Count II, first degree murder.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

2. We note that *State v. Arnett,* 125 Ariz. 201, 608 P.2d 778 (1980), advises that when a defendant is to be resentenced in death cases, evidence and testimony should be as fresh as possible, and that relying on a previous hearing on mitigation and aggravation conducted months before the imposition of the death penalty is not recommended.