564 A.2d 1226

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Kelvin MORRIS, Appellant.**

Supreme Court of Pennsylvania.

Argued April 12, 1989.

Decided Sept. 22, 1989.

534

536

Daniel M. Preminger, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Helen Kane, Robert A. Graci, Chief, Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

The appellant was tried by a jury and found guilty of murder in the first degree [1] and robbery.[2] After further deliberations that same jury rendered a verdict of death for the first degree murder conviction.[3] Post-trial motions were denied and the judgment of sentence was entered on September 8, 1987.[4] In addition to imposing the death sentence fixed by the jury,[5] the sentencing judge imposed a consecutive sentence of ten to twenty years imprisonment, on the robbery conviction. Appellant directly appealed the judgments of sentence.[6]

The facts giving rise to this action begin on August 9, 1980, when at approximately 3:00 a.m., the police were summoned to investigate an alarm at the Pep Boys Auto Parts Store at 48th and Girard Avenue in Philadelphia, Pennsylvania. Upon arrival an officer, Alexander Stephens, discovered that the front window to the store had been broken. Subsequently the manager of the store, Bob McDonald, arrived and both went through the store to make sure everything was in order. Upon finding everything in order the police officer left and the manager then called the Franklin Glass Company to get the window boarded up for the night. At approximately 4:30 a.m., a William Linberry, an employee of the glass company, arrived at the store and began boarding up the broken window. Approximately 10 minutes later, while Mr. Linberry and Mr. McDonald were outside the store discussing the broken window, an individual crossed the street from the ARCO service station and asked what had happened. This man was carrying a yellow

1. 18 Pa.C.S. §§ 2501; 2502(a).

2. 18 Pa.C.S. § 3701.

3. 42 Pa.C.S. § 9711.

4. Appellant's trial was presided over by the Honorable Eugene Gelfand. Judge Gelfand died March 27, 1987. The case was reassigned to the Honorable Albert F. Sabo. Judge Sabo denied the post-trial motions and entered the judgment of sentence.

5. 42 Pa.C.S. § 9711(g).

6. *See* 42 Pa.C.S. §§ 722(4); 9711(h)(1). Pa.R.A.P. 702(b).

bag and subsequently produced a hand gun and then stated to Mr. McDonald, "put the money in the bag." McDonald replied "what money" and with that, the man shot Mr. McDonald twice, killing him. The appellant was subsequently identified as the perpetrator of the robbery/murder and was arrested October 22, 1980, in Suffolk City, Virginia.

■■■ The appellant makes several allegations of trial error. However, before addressing the specific issues raised by the appellant, we must make an independent review of the record to determine whether the evidence was sufficient to sustain the convictions.[7] At trial Mr. Linberry identified the appellant as the person whom he saw shoot Mr. McDonald. He testified that after the appellant fired the first shot, he dove under his van and he then heard another shot. He testified that after he heard the appellant walk away, he called the police.

Another witness, a Ronald Johnson, testified that he was at the ARCO station across from the Pep Boys store on the morning in question, and that the appellant came up to him and two other boys that were at the ARCO station and told them to get out of there. He testified that the other boys ran across the street into Duram Park but that he only ran up the street and stopped and that from his vantage point he could still see the ARCO station and Pep Boys store. He testified that the appellant had a yellow bag and that he watched the appellant walk over to the store and talk to the two men fixing the window. He stated that he then saw the appellant shoot one of the men.

7. It is the practice of this Court in cases in which a death penalty has been imposed to review the sufficiency of the evidence supporting a conviction. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26–27 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Syre,* 507 Pa. 299, 489 A.2d 1340 (1985).

Next, a James Willie testified that the appellant moved in with him towards the end of August of 1980. Mr. Willie testified that a couple of weeks after the appellant moved in, the appellant told him that he robbed a Pep Boys store in Philadelphia. He testified that the appellant told him that there were two men there, that he had shot one and that the other had "hid under a car or truck." Mr. Willie stated that he reported this to the Suffolk City, Virginia, Police Department, two days later. Finally an Officer Thomas Newsome, of the Suffolk City, Virginia, Police Department testified that he was involved in the interrogation of the appellant after his arrest on October 22, 1980. Officer Newsome testified that after the appellant was properly apprised of his rights, he told the appellant that he was wanted in Philadelphia in connection with the robbery of a store and the shooting of a clerk. Officer Newsome stated that the appellant immediately replied, "I did it to keep up with the crowd." N.T., 11/23/83, p.83. Further, Officer Newsome testified that the appellant gave his address as 4808 Merion Avenue in Philadelphia.

There was sufficient evidence presented, which if accepted by the jury, established the appellant's guilt beyond a reasonable doubt. With the credibilities of these witnesses accepted by the jury, the evidence was overwhelming. With this in mind we address the appellant's specific claims of error.

His first claim is that the trial court erred in denying his motion for a mistrial based upon a Commonwealth witness' testimony, from which the jury could have inferred that the appellant was involved in unrelated criminal activity. At trial the prosecution asked Officer Newsome what he said to the appellant when he was first brought in for questioning. Officer Newsome replied, "I told him I wanted to talk to him concerning an offense in Suffolk and also a Philadelphia situation." N.T., 11/23/83, p. 75. The defense then objected and moved for a mistrial.[8] The trial court denied the motion reasoning that the witness' state-

8. The appellant never testified.

ment did not directly inculpate the appellant in any other crimes.

Appellant claims that the testimony was highly prejudicial and alleges that the prosecution intentionally elicited the testimony. Further, that while no curative instruction was requested, one would have been inadequate under the circumstances. The prosecution argues that the statement was innocuous, and further asserts that since no curative instruction was requested, the appellant is not entitled to relief because any remote prejudicial impact could have been remedied by a curative instruction.

In *Commonwealth v. Morris*, 513 Pa. 169, 519 A.2d 374 (1986), we addressed a similar situation where there was an improper reference to prior criminal activity. In *Morris* we held:

> As a general rule, evidence of crimes unrelated to the charge for which the defendant is being tried, is. inadmissible.... There is no *per se* rule that requires a new trial for a defendant every time there is a reference to prior criminal activity ... "[W]e have never ascribed to the view that all improper references to prior criminal activities necessarily require the award of a new trial as the only effective remedy.' ... Further, the reference to prior criminal activity must be prejudicial to the defendant, with prejudice resulting 'where the testimony conveys to the jury, either expressly or by reasonable implication, the fact of a prior criminal offense.'
>
> However, it is possible to eradicate any possible prejudice resulting from reference to prior criminal activity by the defendant.... An immediate curative instruction to the jury may alleviate any harm to the defendant that results from reference to prior criminal conduct.

*Id.*, 513 Pa. at 175–76, 519 A.2d at 376–77. (Citations omitted).

This is not a situation involving an exception to the general rule, however, we do not believe that Officer Newsome's testimony created an inference in the minds of the jurors that the appellant had been involved in prior criminal

activity. At best this testimony implied that the appellant was merely a suspect in a crime and not that he was ever charged or convicted of any unrelated crime. It neither expressly nor by reasonable implication, conveyed to the jury that the appellant had in fact committed an unrelated criminal offense. Thus we do not believe the testimony warrants a new trial. As we said in *Morris,* there is no *per se* rule that requires a new trial for a defendant every time there is reference to prior criminal activity. In light of the overwhelming evidence presented establishing appellant's guilt, the improper reference to the suspicion that the appellant was possibly involved in some unspecified crime, was harmless.

 The appellant next asserts that the trial court erred in allowing the introduction of a composite sketch of the killer. The sketch had been drawn by a police artist, from the description given by Ronald Johnson approximately three days after the killing. The appellant asserts that the sketch was hearsay, did not fall under any exception to the hearsay rule and thus its admission was tantamount to prejudicial error. The admission of the sketch was violative of the hearsay rule,[9] however, in view of the overwhelming evidence against the appellant, the error was harmless. *Commonwealth v. Floyd,* 506 Pa. 85, 92–93, 484 A.2d 365, 368–69 (1984); *Commonwealth v. Mehmeti,* 501 Pa. 589, 596, 462 A.2d 657, 660–661 (1983). The appellant's convic-

---

**9.** The trial court admitted the sketch under the *res gestae* exception to the hearsay rule. The Commonwealth now asserts that even if the sketch was not properly admitted under the *res gestae* exception, its admission was harmless since the defense tried to impeach the witness after its admission. Finally, the Commonwealth asserts that the sketch is admissible under *Commonwealth v. Brady,* 510 Pa. 123, 507 A.2d 66 (1986).

The sketch clearly does not fall within any of the *res gestae* exceptions to the hearsay rule. *See Commonwealth v. Green,* 487 Pa. 322, 409 A.2d 371 (1979). Furthermore, the prosecution cannot rely on the fact that the defense tried to impeach the witness after the sketch was introduced because had it not been admitted, the defense might have refrained from trying to impeach the witness. Finally, in *Brady* we held that prior *inconsistent* statements are admissible as substantive evidence, not that every extra-judicial statement is now admissible. Thus, we believe that the sketch's admission was improper.

tion is supported by eyewitness identifications and by the appellant's own admissions of guilt, thus, the improper admission of the hearsay evidence was harmless. *Floyd, supra.*

Next he asserts that he is entitled to a new trial because the prosecutor allegedly made two improper remarks during his closing argument to the jury. During his summation the prosecutor stated that "if it was not the manager of Pep Boys it would have been somebody else." N.T., 11/28/83, p. 92. Further the appellant asserts that the prosecutor, in commenting about the credibility of two of the defense witnesses, stated "they are robbers—have no reason in the world to tell police the truth." The appellant asserts that the alleged remarks were improper expressions of the prosecutor's opinion and that they had the effect of destroying the objectivity of the jurors.

With regard to the appellant's first claim of improper comment, the record reflects that the prosecutor's comment was derived from Mr. Linberry's testimony that the appellant just walked up and fired without any real provocation and the appellant's own admission to Officer Newsome, that he did it just to keep up with the crowd. Looking at the comment in this context we believe that it was an inference reasonably derived from the evidence and fell within the ambit of fair comment. *See Commonwealth v. Barren,* 501 Pa. 493, 498, 462 A.2d 233, 235 (1983). Furthermore, even if the statement could be considered to be an improper expression of opinion, the record reflects that immediately after this comment and in fact several times during the trial, the trial judge instructed the jury that "what-ever the evidence is and any inference to be taken from that evidence is for you alone." N.T., 11/28/83, p. 92. Thus, the appellant was not prejudiced.

Appellant's second claim of improper comment is not supported by the record. While the prosecutor did comment on credibility of the witnesses and reminded the jury that two of the defense witnesses had been convicted of robbery and theft, he never stated that they had no reason

in the world to tell the police the truth. *See* N.T., 11/28/83, p. 86–87. The prosecutor's actual comment was supported by the evidence and was proper. The appellant is entitled to no relief on the basis of these remarks.

The appellant next makes five assignments of ineffective assistance by his trial counsel.[10] We have reviewed each and believe them to be baseless.

Finally, in all cases in which the death penalty has been imposed, we are obligated by statute to review the record and to assure that the death sentence: is not the product of passion, prejudice or any other arbitrary factor;[11] is supported by a finding of aggravating circumstances specified in subsection (d);[12] and is not excessive or disproportionate to the penalty imposed in similar cases....[13] Further, pursuant to *Commonwealth v. Frey,* 504 Pa. 428, 443, 475 A.2d 700, 707–08 (1984), *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984), we are obligated to review data and information pertaining to similar cases, compiled by the Administrative Office of the Pennsylvania Courts (AOPC).

The jury found that the aggravating circumstances outweighed any mitigating circumstances in imposing the death penalty. Specifically the jury found that the appellant murdered Mr. McDonald while committing a felony and that the appellant knowingly created a grave risk of death to another while committing the murder. This is

---

**10.** Specifically he argues that: (1) trial counsel failed to investigate and/or properly cross-examine a Commonwealth witness; (2) trial counsel failed to investigate and/or have witnesses, helpful to the appellant's defense, testify; (3) trial counsel failed to object to improper closing arguments by the prosecution; (4) trial counsel failed to request appropriate curative instruction for the prosecution's improper closing remarks and the improper admission of evidence which created an inference of unrelated criminal activity; and (5) that trial counsel failed to seek vacation of the death sentence and imposition of life imprisonment.

**11.** 42 Pa.C.S.A. § 9711(h)(3)(i).

**12.** 42 Pa.C.S.A. § 9711(h)(3)(ii).

**13.** 42 Pa.C.S.A. § 9711(h)(3)(iii).

supported by the record[14] and is within the statute. 42 Pa.C.S. §§ 9711(d)(6) and (7). Furthermore, we find the punishment appropriate and not the product of passion, prejudice or any arbitrary factor. We also have reviewed an AOPC study and the appellant's sentence is not disproportionate to the sentence imposed to others similarly situated.

Based upon the forgoing reasons, we sustain the convictions and affirm the sentences.

NIX, C.J., and ZAPPALA, J., concur in the result.

14. The appellant attacks the latter of the two findings by the jury asserting that there was no basis upon which the jury could find that the appellant had placed Mr. Linberry's life in jeopardy. Accepting for the sake of argument, that the appellant's shooting of the person standing next to him is insufficient to sustain a finding that Mr. Linberry's life was in peril, the evidence was still sufficient for the jury to reach this finding. Ronald Johnson testified that the appellant fired three shots. It was established that Mr. McDonald was only shot twice. Because of the short distance between the victim and the appellant at the time of shooting, the jury could have properly inferred that appellant was not only shooting at Mr. McDonald.

The appellant relies heavily on Mr. Linberry's testimony that he only heard two shots being fired. Further, appellant relies on an unsworn written statement allegedly made by Ronald Johnson subsequent to trial. However, the discrepancy in the testimony with regard to the number of shots fired can be explained by the fact that Mr. Linberry was very excited and was diving under his van during the shooting and thus might not have heard one of the shots. Moreover Ronald Johnson alleges in his post-trial statement, that he never saw the shooting and that he only identified the appellant to get favorable treatment by police in another legal matter. This statement does not hold up under close scrutiny.

In the statement Johnson stated that he was in Duram Park prior to the shooting and that he saw an unknown man walking away from the shooting when he left the park to see what happened. However Mr. Linberry's trial testimony corroborated Johnson's testimony, in that he had seen the appellant and the boys at the at the ARCO station when he arrived. See N.T., 11/18/83, p. 83–84. Johnson testified that the appellant told him and the others to get out of there just prior to the shooting. N.T., 11/21/83, p. 9. Further the record reflects that Johnson was not arrested until two weeks after the shooting and approximately 10 days after he gave the description to the police artist for the sketch. As a general rule recantations are viewed as extremely unreliable, Commonwealth v. Nelson, 484 Pa. 11, 398 A.2d 636 (1979), but this one is devoid of any credibility. Finally, Ronald Johnson's prior testimony is still substantive evidence of the appellant's guilt

regardless of the fact that it is now denied. *Commonwealth v. Brady,* 510 Pa. 123, 507 A.2d 66 (1986).