## Commonwealth v. Wheaton

*Jeff Leber, assistant district attorney,* for the Commonwealth.

*Joseph Marasco,* for defendant.

LEETE, *P.J.,* November 14, 1991—

### OPINION AND ORDER

This matter comes before the court following defendant's guilty plea to first degree murder relative to the defendant's ex-wife, Dawn Marie Wheaton, and also guilty pleas to two counts of attempted murder relative to Paul Hulburt and Maynard Sherman. This was the defendant's second guilty plea, the first being withdrawn by the defendant in view of the fact that the defendant disagreed with the Commonwealth's recommendation that no death penalty would be sought. On October 28, 1991, the defendant filed a motion in limine seeking to exclude the testimony of Paul Hulburt and Sara Pierce in the death penalty phase

of the above captioned matter, on the basis that the same was irrelevant as a matter of law. The court has ruled favorably on the defendant's motion and this opinion is filed in support of the order of November 6, 1991.

The defendant in this matter has stated in court he believes the death penalty to be appropriate, and has requested to be executed.

The Commonwealth has, in recent days, filed a certification of notice of aggravating circumstances. This was in the form of a letter dated November 5, 1990, and sent to defendant's prior counsel, David A. Whitney, who has since been killed in an automobile accident. The Commonwealth states in that letter that it "continues to examine whether or not it will seek the death penalty in this case. Aggravating circumstances 6 and 7 apply to this case." At argument, the parties have agreed that the only aggravating circumstance which may be appropriate in this case is no. 7. Title 42 Pa.C.S. §9711(d)(7), defines that aggravating circumstance as follows: "In the commission of the offense, the defendant knowingly created a grave risk of death to another person in addition to the victim of this offense."

The Commonwealth contends that the testimony of Paul Hulburt and Sara Pierce should be admissible during the death penalty phase of the proceeding, on the basis that Paul Hulburt was shot by the defendant with a shotgun in the upper chest and neck area, and Sara Pierce was slightly injured by flying debris. Sara was a child who was visiting the deceased's residence. Paul Hulburt was also in the company of decedent at her residence that evening.

The Commonwealth has generally taken the position throughout this case that Paul Hulburt was also an in-

tended murder victim. The defendant's co-defendant is Jeanmarie Hulburt, then wife of Paul Hulburt.

It is also important to note that the Commonwealth's evidence will establish that Michael Wheaton entered the house after shooting Paul Hulburt and announced, albeit mistakenly, that Paul was dead. There followed an argument of several minutes length with the deceased. While Paul Hulburt was in the living-room, the deceased was taken to the bathroom in the rear of the house, and was in fact alone with the defendant at the time of her death. Sara Pierce had gone into a nearby bedroom, and apparently laid down.

Pennsylvania case-law has not directly addressed the question raised in this motion, namely whether or not the shooting of an additional intended victim, who survives, is an aggravating circumstance, for purposes of the death penalty, where the shootings are separated by several minutes in time, even though they occur in the same house, and where the deceased is murdered out of the sight of other people in the house, without causing danger *at that moment* to any other persons in the house.

There are some hints, however, in Pennsylvania law. In the case of *Commonwealth v. Watson*, 523 Pa. 51, 565 A.2d 132 (1989), defendant shot and wounded a person outside of the deceased's home while approaching the home. Inside, he forced the deceased out of a closet where she had taken refuge with several of her children, and shot her several times. Later, he then left the room and returned and shot the deceased one more time. He also still had a gun in his hand when police arrived, and a policeman had to kick the gun away from him.

The Commonwealth argued the aggravating circumstance could be based on the facts establishing that

the man outside in the car had been injured during the defendant's approach to the deceased's residence, and also that the children, in the closet when shots were fired, were at risk because one shot hit the wall near the closet. The Supreme Court addressed only the question of whether the children were in danger by the defendant's conduct, and found that the jury had properly determined an appropriate aggravating circumstance in that regard. The majority did not reach the question of whether the other events before and after the shooting of the deceased would support this aggravating circumstance. In partial dissent, Justice Zappala stated that aggravating circumstance 7 only applies "where the defendant created a grave risk of death 'in commission of' the murder." *Id.* at __, 565 A.2d at 143. Justice Zappala went on to point out that the assault on the man outside of the home occurred as a "prelude to, not in commission of, the murder." *Id.*

The Commonwealth cites the case of *Commonwealth v. Morris,* 522 Pa. 533, 564 A.2d 1226 (1989) in support of its argument. In *Morris,* the victim was killed in the course of an attempted robbery outside of his business establishment, with another individual standing close by. The Supreme Court, writing through Justice McDermott, upheld the death penalty, finding as one aggravating circumstance that the defendant had created a grave risk of death to another while committing the murder. The defendant had appealed on the basis that there was no evidence upon which the jury could find the bystander's life had been placed in jeopardy. In a footnote, the Supreme Court stated that from the facts the jury could have been inferred that the appellant also shot at the bystander.

This court is not persuaded that the *Morris* case gives much direction. The deceased was the obvious victim because the shooting took place in the context of an attempted robbery of the victim. Several shots were fired, and there may have been one shot that was unaccounted for by the testimony. While the footnote raises the possibility that the bystander was also a possible intended victim, the case seems to rely much more on the fact that the shooting of the victim took place in very close proximity to the victim.

Because of the paucity of Pennsylvania cases dealing with the issue before this court, it is appropriate to examine the laws and cases of other states. Louisiana's death penalty statute provides that it is an aggravating circumstance when the defendant "knowingly created a risk of death or great bodily injury to more than one person." La. Code Crim. P. art 905.4(d).

In *State v. Welcome*, 458 S.2d 1235 (La. 1984), defendant shot and killed his aunt's friend, then after reloading his weapon, chased the aunt and shot her numerous times. The Supreme Court of Louisiana stated that the aggravating circumstance could be met by one of two different ways: "Either a single act of homicide by an offender must create a genuine risk of death or great bodily injury to more than one person, such as the risk created by the explosion of a bomb in a crowded building; or, a single consecutive course of conduct by the offender must contemplate and actually cause the death of one person and the death or great bodily harm of another, such as the slaying of four persons in close proximity and in rapid succession inside a house trailer," as cited in *State v. Williams*, 488 S.2d, 720, 721 (La. 1985). While this language might support the aggravating circumstance in the instant case on the basis of a single consecutive course of conduct, it is

important to note the difference in the statutory language which obviously contemplates multiple victims, as opposed to Pennsylvania, which talks of the risks to other persons, *"in addition to* the victim of the offense." 42 Pa.C.S. subsection 9711(d)(7) (emphasis added).

Oklahoma's death penalty law is similar to that of Louisiana, in that Oklahoma creates as an aggravating circumstance where the defendant "knowingly created a great risk of death to more than one person." Okla. Stat. tit. 21, §701.12, sub. 2.

The cases from Oklahoma frequently deal with the circumstance where the defendant had multiple intended victims. The courts there have refused to view subsequent acts as separate occurrences merely because they have been separated by short time or space. For example, in *Nguyen v. State,* 769 P.2d. 167, (Okla. Crim. App. 1988), there were three murder victims who resided in the same house and who were all present when the defendant arrived. The fact that he killed all of them was considered as an aggravating circumstance, and the court found it to be irrelevant that they were not physically together when the killing occurred. Also See *Cartwright v. State,* 695 P.2d, 548 (Okla. Crim. App. 1985).

The statutes and case-law of Arizona provide a closer analogy to Pennsylvania law. The Arizona statute states it is an aggravating circumstance when "in the commission of the offense the defendant knowingly created a grave risk of death to another person or persons in addition to the victim of the offense." Ariz. R.S. subsection 13-703(f)(3). The writer believes that the critical language here is very similar to Pennsylvania when the statute speaks of the danger to others *in addition to the victim of the offense.*

An analysis of the case of *State of Arizona v. Rossi*, 146 Ariz. 359, 706 P.2d 371 (1985) is useful. In that case, the defendant went to the deceased's home with the express purpose of robbing him and killing him. After the defendant killed the decedent, a neighbor arrived who had heard a disturbance. The defendant hit the neighbor in the back of the head and shot her several times in the chest and then fled. The neighbor survived. In rejecting the cited aggravating circumstance, the court found the defendant had not in fact knowingly created a grave risk of death to the neighbor in the commission of the homicide. This was because the neighbor was a specific intended victim of the crime, and not a bystander "in the zone of danger during defendant's murderous act." *Id.* Likewise, in *State v. Steelman*, 126 Ariz. 19, 612 P.2d 475 (1986) the defendant tied up a husband and wife in separate rooms, and shot them. Both were apparently intended victims of the offense. Therefore, it was held the aggravating circumstance was not shown.

Using a factual analysis, the thinking of the Arizona appellate court seems to coincide with that of the Pennsylvania Supreme Court. In *Commonwealth v. Smith*, for example, the aggravating circumstance in question was upheld in a case where others were on a porch in close proximity to the victim, on the basis that they were in danger of being struck by a "errant ricochet or pass through bullet." *Id.*, 518 Pa. 15, 540 A.2d 246 (1988). The same is true in *Commonwealth v. Stoyko*, 504 Pa. 455, 475 A.2d 714 (1984), in which the aggravating circumstance was upheld where the defendant shot the deceased in an automobile, occupied by other persons at the time. Also consistent is *Commonwealth v. Griffin*, 511 Pa. 553, 515 A.2d 865 (1986), where bystanders were deemed at risk even though

no one else was injured when the victim was shot in the head at close range at a crowded party.

In *Commonwealth v. Logan,* Justice Papadakos upheld the aggravating circumstance where the defendant murdered a stranger on a bus with an axe in the midst of other passengers, in an opinion in which two other justices concurred, with one additional justice concurring in the result. *Commonwealth v. Logan,* 519 Pa. 607, 549 A.2d 531 (1988).

*Commonwealth v. Moser,* 519 Pa. 441, 549 A.2d 76 (1988), is quite similar. There, the defendant murdered his wife and two daughters outside of church using a powerful rifle within a range of 500 yards. Many other persons were in the area, including some in the line of fire. The aggravating circumstance in question here was held to apply.

This court is also mindful of the Rules of Statutory Construction as the same relate to penal statutes in that all penal provisions of statutes must, as a matter of law, be strictly construed. 1 Pa.C.S. subsection 1928.

Pennsylvania does have a specific aggravating circumstance which a jury may consider where multiple offenses, whether or not part of a singular plan, are involved. Specifically, that circumstance reads as follows:

"The defendant has been convicted of another federal or state offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable...." 42 Pa.C.S. §9711(d)(10).

Thus, there is a provision which may give rise to a death sentence in Pennsylvania where there are multiple homicides. Here, none of the other offenses would give rise to life imprisonment. If the injuries to Paul

Hulburt or Sara Pierce had been fatal, then perhaps circumstance no. 10 might have been applicable. Thankfully, that circumstance is not before us today.

In view of the foregoing, the court feels that the testimony of Paul Hulburt and Sara Pierce is in fact irrelevant, as Paul Hulburt was apparently an intended victim of the defendant, and Sara Pierce was injured and placed in danger incidental only to the attempted murder of Paul Hulburt. The defendant has, in fact, pled guilty to the attempted murder of Paul Hulburt.

The Pennsylvania statute relative to aggravating circumstances is written in narrow terms. Paul Hulburt and Sara Pierce were not bystanders in the zone of danger during the defendant's murderous act. Since the Pennsylvania statute talks in terms of the risks to other persons, "in addition to the victim of the offense," the Legislature did not contemplate the circumstance would be applied to other intended victims in addition to the deceased. Therefore, the proffered testimony is irrelevant, and the court affirms its order of November 6, 1991.